355 So.2d 1264 (1978)
Richard V. DONAHUE, Appellant,
v.
Howard N. HEBERT, Appellee.
No. 77-888.
District Court of Appeal of Florida, Fourth District.
March 14, 1978.
William H. Harrell, of Reinman, Harrell & Silberhorn, Melbourne, for appellant.
William C. Potter, of Nabors, Potter, McClelland & Griffith, Melbourne, for appellee.
DOWNEY, Judge.
Appellant seeks review by interlocutory appeal of an order denying his objections to interrogatories directed to him in a libel suit. Such an order in an action formerly cognizable at law is not reviewable by interlocutory appeal, but we will treat the matter as a Petition for Writ of Certiorari. Obviously, if Donahue answers the interrogatories, the departure from the essential requirements of law, if such there be, cannot be rectified upon plenary appeal from the final judgment. Therefore, common law certiorari is the appropriate remedy.
Appellee Hebert sued appellant Donahue for libel. After the cause was at issue Hebert directed sixteen interrogatories to Donahue, who answered six of them and objected to the other ten. The interrogatories to which Donahue objected related to the discovery of his financial resources, particularly to his 1) interests in any partnerships, joint ventures, or single proprietorships during the previous five years; 2) his income, bank accounts, safety depositories and transfers of property, all within the previous three years, and 3) present ownership of real and personal property and the value thereof.
*1265 Donahue concedes that the financial resources of a defendant in a libel suit are an appropriate subject of discovery when punitive damages are properly sought. He also recognizes the broad discretion that inheres in the trial court in determining the perimeters of discovery, and that the exercise of that discretion will not be disturbed absent a clear abuse thereof. But Donahue seems to contend that when a defendant states his net worth under oath, or verifies a statement of his assets and liabilities, the inquiry into his finances must end. He phrases this contention in his brief as follows:
"... The Appellant would argue that by providing a financial statement executed under oath he has provided a `properly authenticated financial statement' in accordance with the principles as set forth in Tallahassee Democrat, Inc., supra. It should be presumed that when a citizen of the United States files with a court a sworn statement that he is telling the truth. It should not be a requirement that the Appellant not only provide a sworn financial statement, but, in addition, disclose all of his business activities so that the Appellee can investigate him and determine whether or not he is telling the truth. Such a procedure may be entirely appropriate in a post-judgment discovery proceeding. However, prior to judgment, the liability, if any, of the defendant has not even been established. The burden of proving any liability is, of course, on the Appellee and the Appellant carries with him, therefore, a presumption that he is not guilty of libel. The Appellee is seeking information to verify the Appellant's statement of financial net worth prior to even establishing liability on the part of the Appellant, and is, therefore, `placing the cart before the horse.'"
We suggest the foregoing statement misses the mark. However, there seems to be some confusion as to the proper direction and scope of discovery in determining the financial resources of a party in a law suit. Some authorities seem to suggest that a party can simply furnish a sworn statement of his current assets and liabilities to his opponent and thereby cut off any further aggressive inquiry into his true financial capacity to respond. We know from experience that one party frequently minimizes his financial ability to respond when it is an issue in a law suit, while the other party often has a tendency to inflate that same financial ability. Even under oath a party often seems to view another party's financial resources as great or small in direct proportion to the benefit which will accrue to that party. Thus, it is the height of naivete to suggest that a sworn statement of one's net worth must be accepted as the final word on that important subject. The search for forgotten or hidden assets is of the essence of the discovery process. The whereabouts of assets disclosed by a recent income tax return, or shown on a recent financial statement furnished in another situation when the current litigation was not envisioned is very definitely appropriate inquiry as is the bona fides of the recent disposition of assets. These are routine inquiries for every knowledgeable trial lawyer in cases in which the financial resources of a party is a relevant issue. One must be afforded reasonable latitude in double and cross checking a party's statements about his current net worth. This, of course, can be done by reviewing income tax returns, recent financial statements, and the myriad of other sources of financial information. As Judge Walden put it, speaking for this court in International Union of Operating Engineers v. Lassiter, 295 So.2d 634 (Fla. 4th DCA 1974); rev'd on other grounds 314 So.2d 761 (Fla. 1975):
"And now back to the term `financial resources' contained in the instruction. As stated, it is the broader concept and, depending upon the circumstances, there may well be additional proofs which would be helpful to the jury and court, which proofs would not be necessarily included in a defendant's balance sheet. Thus, the term gives the trial judge a more liberal standard to determine whether a given proffer of evidence is relevant and material. For instance, there could well be, and properly so, proof *1266 as to income, cash flow, expenses, anticipated income, anticipated diminutions of income, anticipated casualties and, as in the instant case, proofs as to assessments of the membership possibilities. These items, among other of like moment, would be receivable in addition to net worth figures under the scope of financial resources. All of this material, including the reflection of net worth, goes to make up a defendant's financial resources which the jury is entitled to consider in assessing punitive damages as commanded in Florida Standard Jury Instruction 6.12."
Among the various sources available to the discoverer are those which Hebert inquired about: bank accounts, depositories, present and recent ownership of property and its value, and any interests in various business arrangements. Inquiry pertaining to the three previous years is certainly a reasonable period and we cannot say that allowing inquiry for the previous five years as to the business relationships such as sole proprietorships, partnerships and joint ventures is an abuse of discretion. On the other hand, the trial court should always be sensitive to the protection of a party from harassment and from an overly burdensome inquiry.
In view of the foregoing, if the case of Tallahassee Democrat, Inc. v. Pogue, 280 So.2d 512 (Fla. 1st DCA 1973), can be read to restrict discovery in cases of this nature to the furnishing of a financial statement sworn to by the party furnishing it, we strongly disagree. Likewise, to the extent that our case of Gamer v. Keen, 347 So.2d 663 (Fla. 4th DCA 1977), conflicts with what is said here, we recede therefrom.
Accordingly, the Petition for Writ of Certiorari is denied.
ANSTEAD and DAUKSCH, JJ., concur.